(C. D. 191)

F. W. MYERS & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 19, 1939)

*E. D. Howald* (*John F. Kavanagh,* associate counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: The merchandise here in controversy consists of pink-colored and yellow-colored printing paper. It was classified and assessed for duty at 10 per centum ad valorem and one-fourth of 1 cent per pound under paragraph 1401 of the Tariff Act of 1930, as "uncoated printing paper, not specially provided for, not including cover paper." Free entry is claimed therefor by plaintiff under paragraph 1772 of said act, as "standard newsprint paper."

Plaintiff has put in evidence two samples of the pink-colored paper in question, which are marked Collective Exhibit 1. There is no

sample, however, of the yellow-colored paper. Plaintiff also put in evidence as Illustrative Exhibit A a pink edition of the Syracuse Herald, a daily newspaper, dated May 25, 1937, for the purpose of showing that pink paper of the exact shade imported was used and had been used for many years prior to June 17, 1930, in the printing of newspapers. Collective Illustrative Exhibit B, consisting of a yellow and a pink sheet edition of the Cleveland Shopping News, was also introduced by plaintiff as showing the use to which the imported paper was put.

The defendant put in evidence Illustrative Exhibit C, as illustrating the shade of pink paper the Government witness sold for printing newspapers.

The Government contends that the pink paper under consideration is of a deeper shade than that generally used in the printing of newspapers at the time of the enactment of the Tariff Act of 1930 and is of a type or class that was used for handbills, posters, dodgers, and throwaways.

In the case of *United States* v. *Tower & Sons*, 26 C. C. P. A. 1, T. D. 49534, the appellate court held that the description "standard newsprint paper" was a designation by use, and that in determining the meaning of such *eo nomine* designation, it must be determined in accordance with its proven chief use at and immediately prior to the time of the passage of the tariff act.

Apart from the question of the color or depth of color of the imported merchandise, there does not seem to be any dispute as to the paper otherwise having all the necessary requirements for newsprint paper.

The sole question for our determination therefore is whether or not paper with the tint or shade of color as that under consideration is of the class or kind that was chiefly used for the printing of newspapers at and prior to June 17, 1930. In this respect the question is the same as that raised in *Hober, Niblock & Co. et al.* v. *United States*, T. D. 48938, decided by this court.

On the issue thus presented, a partner of the firm of Herman Scot Chalfant, Inc., testified on behalf of plaintiff. He stated he had been in the business of selling all kinds of paper, including newsprint paper, for the past 25 years; that he sold the paper in question to the Cleveland Shopping News, the consignee of the merchandise in question. Among other things he stated that he sold colored newsprint paper prior to June 17, 1930, in New York State and Ohio, but that he sold a larger quantity to shopping newspapers; that shopping newspapers are in many cases controlled by various department stores, and that they print their advertisements in this paper and distribute it gratis (R. 21); that in some shopping newspapers they have news in addition to the advertisements; that the Cleveland

Shopping News is largely advertising; that they have some news at times, but the witness could not tell whether they print news at all times. He further stated that he did not know what kind of colored newsprint paper was being used in the Far West in June 1930; that he has seen paper similar to Collective Exhibit 1 used for posters, hand-bills, and throwaways; that some poster paper is exactly the same as standard newsprint paper, and that there is other poster paper that is entirely different from standard newsprint paper (R. 26).

It is not altogether clear from the record whether Illustrative Collective Exhibit B, which was put in evidence by plaintiff to show the use to which the imported paper is put, is supposed to be complete copies of the Cleveland Shopping News. Apparently they were so introduced. But nowhere on either the pink or the yellow copy does the name Cleveland Shopping News appear. The one in pink-colored paper bears the heading "Taylor's Basement," and the one in yellow paper bears the heading "The May Co. Basement." The contents in each instance is devoted entirely to advertising sales of merchandise which were to take place at the respective establishments, apparently department stores, on certain designated dates. So far as we can judge from these publications, they are nothing more or less than advertising sheets, and do not appear to have any relation whatever to any regularly printed newspaper, or as parts thereof.

Samuel Pruyn, connected with the firm of Finch, Pruyn & Co., Glenns Falls, N. Y., testified for the defendant. He stated that his firm manufactures newsprint and other ground wood papers; that he has been connected with the firm for the past 28 years; that his present position is sales manager, and that he has been selling for the past 21 or 22 years; that his territory covers western New England, New York, New Jersey, Maryland, Pennsylvania, Virginia, and Ohio; that his firm also manufactures and sells poster paper, although he did not sell colored poster paper on or before June 17, 1930. According to the best of his knowledge the pink paper in question is of a deeper shade than that which was generally used by newspapers at or prior to the enactment of the present tariff act, and he referred to Illustrative Exhibit C as representing the shade of pink that his firm sells for printing newspapers, which is of a lighter tint than the pink sheets in Collective Exhibit 1. The witness stated further that to his knowledge no newspaper used a pink as deep as Collective Exhibit 1, and that he does not recall ever having seen newspapers with as deep a colored pink as that of said Exhibit 1 at and prior to June 17, 1930 (R. 41); also that he never saw yellow paper used in the publication of newspapers (R. 43).

In our opinion, based on the testimony and record herein, and in view of the decision in the *Tower* case, *supra*, plaintiff has failed to overcome the presumption of correctness in favor of the collector's

classification and assessment of duty, or to make out a *prima facie* case for itself as to the pink-colored paper in issue.

The fact that the Syracuse Herald in its edition of May 25, 1937 (Illustrative Exhibit A), may have used the same shade of pink as that of the paper under consideration, is not in itself of course sufficient to show chief use of this particular type of paper for the printing of newspapers, even at the date of its issue (May 25, 1937), much less would it be competent to prove chief use of such paper on or before the passage of the tariff act.

In regard to the yellow paper in the importation, plaintiff's witness, when asked, "Did you ever see any newspaper made up of the yellow-colored paper involved, similar to that involved in this importation?" answered, "I am quite sure that I saw one, but I don't remember where it was. As I said, it very seldom has been used." (R. 29.)

Here, again, the testimony entirely fails to show chief use of such yellow-colored paper for the printing of newspapers at or prior to the passage of the Tariff Act of 1930.

We must therefore overrule the claim of the plaintiff. It should be thoroughly understood, however, that we are deciding this case solely on the record made herein. Judgment will be rendered accordingly.