(C. D. 631)

F. W. Myers & Co. *v.* United States

United States Customs Court, Second Division

(Decided May 18, 1942)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Hadley S. King* of counsel) for the plaintiffs.

*Paul P. Rao,* Assistant Attorney General (*William J. Vitale, Richard H. Welsh,* and *Joseph E. Weil,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: This is a suit against the United States arising at the port of Ogdensburg, brought to recover certain customs duties alleged to have been illegally levied on an importation of certain pink-colored paper. The paper was assessed for duty by the collector as uncoated printing paper, not specially provided for, at ½ cent per pound plus 5 per centum ad valorem, under paragraph 1401 of the Tariff Act of 1930, as modified by the Canadian Trade Agreement. The plaintiffs claim the merchandise to be free of duty under paragraph 1772 of said tariff act, as "Standard newsprint paper."

Samples of the imported paper have been introduced in evidence herein as collective exhibit 1.

It is the contention of the Government in this case that the pink paper in question is of a deeper shade than that generally or chiefly used for the printing of newspapers at the time of the enactment of the present Tariff Act of June 17, 1930, and that it is of a class used for posters or other purposes. It is conceded by counsel for the defendant that apart from the question of the depth of color the imported paper otherwise is of the same character as newsprint paper (R. 3).

During the trial of this case counsel for the Government made a motion to incorporate as a part of the record herein the record in *F. W. Myers & Co., Inc.* v. *United States,* 3 Cust. Ct. 11, C. D. 191, on the ground that the plaintiffs, the issue, and the kind of merchandise are all the same in both cases. Decision on said motion was reserved for Division Two of this court by the sitting judge. As it appears from a comparison of the samples in the present case and in said C. D. 191 that the depth of the pink color of the paper in both cases is practically alike, we have decided to grant the motion to incorporate said record, with an exception to this ruling to plaintiffs.

On the issue thus presented the plaintiffs have called three witnesses, and the defendant has called two.

Plaintiffs' first witness was Lee Ellmaker, publisher of the Philadelphia Daily News for the past 16 years, and the importer of the paper in question. He stated that his newspaper had a daily circulation of 130,000; that he has been connected with newspapers since 1914, including the Philadelphia Press having a circulation of about 80,000 to 100,000; that he was also connected with other papers, and has seen newsprint paper manufactured in the United States and Canada (R. 5). He stated that, with the exception of 3 rolls, all of the paper under consideration was used to print regular editions of his newspaper, and that the color of same, as represented by collective exhibit 1, is a standard color they have ordered for years (R. 6); that they used that

color before and after 1930 and of an average quantity of 2 tons a day; that the New York Graphic used about 4 tons a day of paper of the. class and color of collective exhibit 1 at and before June 17, 1930; and that the Lansing Capitol News, a Michigan paper. used a couple of tons of this paper a month. The witness stated further that he knows of no other use for paper of this kind; that he only knows of his own use of this paper and the use by others from his observation (R. 6–10).

Plaintiffs' next witness was William G. Chandler, who is a member of the advisory board of the Scripps-Howard Supply Co., which purchases supplies, including newsprint, for the 18 Scripps-Howard newspapers, the total circulation of which newspapers is in excess of two million copies daily. The witness stated that he purchased newsprint for said company since 1922, and that he also purchased newsprint for about 8 or 12 non-Scripps-Howard newspapers; that the Scripps-Howard newspapers were using paper of the class and color of collective exhibit 1 on and prior to June, 1930; that he has been familiar with the tint and color of the paper since 1905, when he was with the Toledo News Bee; also that he can tell by the feel and appearance that it is standard newsprint 24 x 36 x 500, within the 5 per centum limitation of the trade. As some of the Scripps-Howard newspapers that were using paper of the tint of said collective exhibit 1 at and before 1930, the witness named the Cleveland Press, the Columbus Citizen, the Cincinnati Press, the Toledo News Bee, the Oklahoma City News, the Houston Press, the Fort Worth Press, the Memphis Press, the San Francisco News, and the San Diego Sun (R. 13). He also named the Toledo Blade, the Columbus Despatch, the Cincinnati Times-Star, and the Cleveland News as some of the non-Scripps-Howard newspapers that used paper of the color of collective exhibit 1 at the time of the passage of the present tariff act; also that the only difference between pink standard newsprint paper of the tint of collective exhibit 1 and white standard newsprint paper is that a handful of cochineal is introduced into the pulp from which the paper is made. The witness stated further that so far as he knows paper of the shade of collective exhibit 1 has never been used for any other purpose; that Scripps-Howard are still using the same shade of pink in a number of their editions, and that the New York Journal, the Chicago American, the Denver Post, and the San Francisco Call-Bulletin also used paper of the same tint in 1930, and that it has been a standard tint since 1905 (R. 14–21).

Plaintiffs' third witness was Alexander T. Williams, who has been connected with the Hearst papers for the past 12 years, and who purchases all the newsprint paper for the various Hearst papers all over the country, of which there are 19 altogether, and of which there were about 25 before 1930. The witness stated that he purchased newsprint for the Hearst papers and observed the paper used by other

newspapers, and has been doing that since 1928; and that the total circulation of all the Hearst papers in 1930 was about four and one-half million copies daily and seven million on Sundays. He further stated that the Hearst papers used paper of the class and color of collective exhibit 1 at and before June 17, 1930; that they used that shade of color in Milwaukee, Detroit, and New York; that in the 6 months prior to 1930 they used 600 tons, and in 1929 they used 1,400 tons; also that the Graphic in New York, the Columbus Dispatch, and the Toledo Blade (non-Hearst newspapers) also used the same color paper as collective exhibit 1 on and before June, 1930 (R. 21–23).

Albert E. Bachmann then testified on behalf of the Government. He stated he was superintendent of the Missisquoi Corporation, makers of paper boards of various kinds, including color specialty boards, and that he has a certain amount of supervision over the color matching; that while he has been in the paper business for 20 years, his color experience covers the last 14 years, during which time he was with various paper companies which made colored papers, and that he had occasion to match colors and do laboratory work in developing new color formulae and making tests on colored papers and dyestuffs of various kinds (R. 33, 35). The witness stated that he did not believe anyone could carry colors accurately in the mind; that he tried it himself, and had to give it up; that in order to accurately compare colors one would have to have a sample of both papers before him at the time; that if two samples are matched in the hands without instruments it is possible to determine without instruments whether two colors are a "commercial match" or whether one sample is deeper or lighter than the other (R. 36, 37). He then testified, after making an ocular comparison of the samples before him, that collective exhibit 1 in the case at bar is a commercial match with exhibit 1 in said C. D. 191, but that illustrative exhibit C in said C. D. 191 is not a commercial match with said exhibit 1 in that case or with collective exhibit 1 in the case at bar (R. 39, 40).

The next witness for the Government was Samuel Pruym, who has been connected for about 24 years with Finch, Pruym & Co., of Glens Falls, N. Y., manufacturers of newsprint and other papers. He stated that his firm manufactured and sold, among other things, pink newsprint paper prior to June, 1930; that he does not remember the tint or shade of the newsprint paper which he offered for sale to newspapers at and prior to June, 1930, except that it was pink; that he is familiar however with the ingredients or materials used in the manufacture of pink newsprint paper (R. 51, 52). He then produced a sample of the paper that his firm made and offered for sale as pink newsprint paper (illustrative exhibit A), also a sample of the pink poster paper made by his firm (illustrative exhibit B); but the witness

did not know whether his firm sold to newspapers pink paper of the shade of illustrative exhibit A at and before June 17, 1930 (R. 55, 56). When asked whether his firm always made pink newsprint paper the same as illustrative exhibit A, he answered that they did not; that illustrative exhibit A, which was of recent manufacture, contains 6 ounces of safranin to 1,000 pounds of stock, but that they have made newsprint paper with 10 ounces of safranin to 1,000 pounds of stock (R. 56); that it was part of his duties to familiarize himself as to the pink newsprint paper used by competitors at and prior to 1930, and that he never saw any pink newsprint of any mill that varied much in shade from their own paper; that collective exhibit 1 in the present case is much deeper than said illustrative exhibit A, but he could not remember whether he ever saw newsprint with as deep a hue as collective exhibit 1 in 1930, but that the paper his firm made and sold to newspapers was approximately of the same tint as illustrative exhibit A at and prior to 1930; also that after comparing the same size sheet of their colored poster paper (illustrative exhibit B), and with his knowledge of the amount of color used to manufacture that paper, he doubted if they ever manufactured pink newsprint in as deep a shade as collective exhibit 1 prior to 1930. The witness testified further as follows:

Judge KINCHELOE. * * * You state that you now have a vivid and mental recollection of the color of the paper that you people manufactured prior to June 17, 1930, that went in as newsprint?

The WITNESS. I stated that the newsprint that we manufactured, the pink newsprint for newspapers, was very much the same shade as the paper now manufactured.

Judge KINCHELOE. Then you do have a vivid recollection of the tint and color?

The WITNESS. Only when it is shown to me. It was like that sheet there. I know we used the same furnish. The number of ounces of safranin will determine the shade of paper.

Judge KINCHELOE. You don't remember what the color of the tint was of your paper that you manufactured for newsprint prior to June 17, 1930?

The WITNESS. No, sir.

The witness further stated, after comparing illustrative exhibit B, which is a sample of their pink poster paper, with collective exhibit 1 herein, that they compare very closely in his opinion, and that they never offered for sale to newspapers the paper they manufactured similar to illustrative exhibit B. The witness testified further as follows:

Judge KINCHELOE. How do you know that if you don't have any personal recollection of the color of the stuff you offered for sale prior to June 17, 1930?

The WITNESS. It gets back to the point that we have never offered pink newsprint with a furnish of 16 ounces of safranin, which this paper contains, and with less than 16 ounces I know we can't produce that shade.

In *United States* v. *Tower & Sons*, 26 C. C. P. A. 1, T. D. 49534, the appellate court held that "Standard newsprint paper" is a designation by use, and that its meaning must be determined in accordance with its proven chief use at and prior to the time of the passage of the tariff act. In our decision in C. D. 191, *supra*, plaintiff failed to show chief use of the involved paper for the printing of newspapers at the time of the enactment of the Tariff Act of 1930, nor did it even show the chief use thereof at the time of importation. The plaintiff's claim for free entry of the merchandise under said paragraph 1772 of said act of 1930, as standard newsprint paper, was accordingly overruled under authority of the *Tower* case, *supra*.

In the present instance the witnesses for the plaintiffs, representing the biggest newspaper publishers in this country, have testified that pink paper of the shade here involved was used in large quantities by their firms for the printing of newspapers at and prior to June 17, 1930; and the same witnesses also stated that so far as they knew this paper was used for no other purpose.

The testimony of the Government's witness, Bachman, that he did not believe anyone could carry shades of color accurately in mind, certainly cannot overcome the positive testimony of plaintiffs' witnesses that the shade of pink in the present paper was the same as that used for the printing of newspapers in 1930. Nor can the testimony of the Government's witness, Pruym, who attempted to show the amount of safranin used by his firm in the manufacture of newsprint paper and poster paper, be given much weight in the case in view of the testimony of plaintiffs' witnesses. ·

In our opinion, the plaintiffs have shown, *prima facie*, that the chief use of paper of the tint of that imported was for the printing of newspapers at and prior to June 17, 1930. The claim for free entry of the merchandise under said paragraph 1772 of said act of 1930 is therefore sustained. Judgment will be rendered accordingly.